UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| 280 MEEKER LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. _____ |
| | ) |
| UMB BANK, N.A., as Trustee | ) |
| | ) |
| Defendant. | ) |

---

## COMPLAINT

280 Meeker LLC ("Plaintiff," "280 Meeker," or "Borrower"), through undersigned counsel, brings this action against UMB Bank, N.A., as Trustee ("Defendant," "UMB" or "Lender"), and alleges as follows:

## INTRODUCTION

Plaintiff is the owner of real property located at 280 Meeker Avenue in Brooklyn, New York. In March 2020, Plaintiff leased the property to a third-party developer, who is in the final stages of constructing a residential apartment building on the property. Plaintiff monetized its interest in the property through an amended and restated secured note, secured by, among other things, a mortgage and assignment of leases and rents on the property, which Plaintiff had leased to a tenant/developer under a ground lease. Plaintiff and Defendant also entered into a servicing agreement, which governed, among other things, how the mortgage loan would be paid over time.

Despite the unambiguous terms of the servicing agreement, beginning in May 2021, Defendant began to demand that Plaintiff continue to fund a reserve account based upon Defendant's unsupported assertion that the tenant had not yet secured financing to develop the

1

property and that applicable building permits had not been obtained.  Defendant was wrong on both points.

In reality, the servicing agreement provided that this escrow account only needed to be funded through the "Project Cost Capitalization and Permit Date."  But there were two ways in which Plaintiff could establish that date.  It could provide Defendant with evidence that the tenant had secured a construction loan, *or* it could establish that the tenant had secured any "other capital source acceptable" to the lender sufficient to fund construction.  But, when Plaintiff provided Defendant with evidence that (i) the tenant *had* secured an adequate capital source to fund construction of the project (including a completion guarantee from the developer); and (ii) the tenant had secured the necessary permits to construct the apartment building, Defendant repeatedly ignored Plaintiff and, instead, declared an Event of Default under the mortgage loan.

In doing so, Defendant ignored its own obligations under the servicing agreement to consider and approve an alternative source of funding and, instead, sought to establish a pretext to begin improperly charging Plaintiff default interest.  Since Defendant purported to declare an Event of Default, it has depleted Plaintiff's reserve accounts, and continuously diverted rent payments and late fees due to Plaintiff in order to pay itself default interest.  Defendant's improper actions breached the express terms of the parties' written agreement and otherwise sought to deprive Plaintiff of the benefit of the bargain.  Plaintiff seeks a declaratory judgment and damages for breach of contract.

## PARTIES

1.      280 Meeker LLC is a Delaware limited liability company, with its principal place of business in New York, New York.  280 Meeker's sole member is Meeker Ventures LLC, which is also a Delaware limited liability company with its principal place of business in New York.  The

members of Meeker Ventures LLC are KREC Williamsburg Investor Corp. (a Delaware corporation with its principal place of business in New York) and 280 Meeker SDG LLC (a Delaware limited liability company with its principal place of business in New York). The sole member of 280 Meeker SDG LLC is 280 Meeker SDG MM LLC (a Delaware limited liability company with its principal place of business in New York). The sole member of 280 Meeker SDG MM LLC is Synapse Development Group (a Delaware limited liability company with its principal place of business in New York), whose sole member is Justin Palmer, an individual domiciled in the State of New York.

2.     280 Meeker is authorized to do business in New York within the meaning of N.Y. LLC Law § 802.

3.     Defendant is a national banking association with its principal place of business in Kansas City, Missouri. Defendant is the Trustee under a Pass-Through Trust Agreement and Declaration of Trust dated the same day as the Loan Documents described herein. Notwithstanding Plaintiff's requests, it has never been provided with copies of the Pass-Through Trust Agreement and Declaration of Trust that purportedly governs the relationship between Defendant and any beneficiaries of the trust.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendant because, *inter alia*, the Servicing Agreement (as defined below) is governed by New York law; the Servicing Agreement was negotiated in New York; under the Servicing Agreement, the parties agreed to "the jurisdiction of the state and federal courts in the Borough of Manhattan in the State of New York"; the loan underlying the Servicing Agreement was made and accepted in New York and loan proceeds were

disbursed in New York; payments under the Servicing Agreement are paid in New York; and the real property that is the subject of the Loan Documents (as defined below) is located in New York.

5.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount-in-controversy exceed $75,000.

6.      As stated above, Borrower is a Delaware limited liability company, and its sole member is also a Delaware limited liability company.  Borrower and its sole member both maintain their principal places of business in New York.  The members of Borrower's sole member are: (i) a Delaware corporation with its principal place of business in New York, and (ii) a Delaware limited liability company with its principal place of business in New York.  The sole member of that limited liability company is also a Delaware limited liability company with its principal place of business in New York, whose sole member is likewise a Delaware limited liability company with its principal place of business in New York, whose sole member is Justin Palmer (an individual domiciled in the State of New York).

7.      Defendant is a national banking association with its designated main office and principal place of business in Kansas City, Missouri.  Thus, Defendant is a citizen of Missouri.  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006).  Accordingly, there is complete diversity between the parties.

8.      In addition to attorneys' fees and costs, Borrower is seeking damages that exceed $75,000.

9.      Venue in is proper because the parties "agree[d] to the jurisdiction of the state and federal courts in the Borough of Manhattan in the State of New York and waive[d] any objection based on forum non conveniens, and any objection to venue of any action instituted in any of the aforementioned courts."

## FACTUAL ALLEGATIONS

10.     On or about March 25, 2020, the parties entered into an Amended and Restated 5.15% Senior Secured Note (the "Note"), which was secured by, among other things, (i) an Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing Statement dated March 25, 2020 from Borrower for the benefit of Defendant (the "Mortgage") on certain real property (the "Property") located at 280 Meeker Avenue in Brooklyn, New York, which Borrower, as landlord, was leasing to Withers Tower LLC (the "Tenant") under a ground lease (the "Lease"); and (ii) an Assignment of Leases and Rents dated March 25, 2020 from Borrower to Defendant assigning Borrower's right, title and interest in and to the Lease and any other leases and rents thereunder (the "Assignment").

11.     On or about March 25, 2020, the parties also entered into a Note Purchase Agreement (the "Note Agreement"), whereby Borrower agreed to sell, and Defendant agreed to purchase, the Note.

12.     On or about March 25, 2020, Plaintiff and Defendant also entered into an Escrow and Servicing Agreement (the "Servicing Agreement"), which sets forth the escrow agreement between the parties.

13.     The Note, Mortgage, Lease, Note Agreement, Assignment, and Servicing Agreement referenced above shall collectively be referred to herein as the "Loan Documents."

14.     When the Loan closed, Plaintiff was required to fund reserve account for a limited period of time.  That obligation ended when (i) Tenant secured permits sufficient to allow it to begin construction of the building's foundation and vertical improvements; and (ii) Tenant secured a construction loan *or* secured "any other capital source" satisfactory to the Trust beneficiary sufficient to pay for the construction.

15.     Specifically, under Section 3.1(b) of the Servicing Agreement, Interim Ground Rent Reserve Deposits ("IGR Reserve Deposits")[1] are due only prior to the occurrence of the Project Cost Capitalization and Permit Date.  Section 4.1(b)(A) of the Servicing Agreement defines the Project Cost Capitalization and Permit Date as:

> [T]he date on which [Plaintiff] has delivered to the Escrow Agent, the Beneficiary and Mayer Brown LLP, special counsel to the holder of the Trust Certificates, (y) reasonably satisfactory evidence that construction leasehold loan financing (and not just a temporary bridge loan) has been entered into and closed, and/or any other capital source acceptable to the Beneficiary has been procured in an amount sufficient to pay for the costs of construction of the planned apartment complex on the Property (the *"Project"*) as set forth in the budget (as reasonably approved by Beneficiary) for such Project as provided therewith, and (z) reasonably satisfactory evidence that permits for the construction of the foundation and vertical improvements of such Project have been issued by the appropriate governmental entities[.][2]

16.     By e-mail dated May 21, 2021, Defendant alleged that Plaintiff had not made a contractually required deposit with the Escrow Agent[3] of immediately available funds in an amount equal to the aggregate Minimum Rent (as that term is defined in the Lease) that would be scheduled to be due for the 25th through 30th calendar month period for deposit into the Escrow

---

[1] The term "Interim Ground Rent Reserve Deposits" as used herein refers to the deposits required under Section 3.1(b) of the Servicing Agreement, which provides that "[a]fter the Closing Date but prior to the Project Cost Capitalization and Permit Date (as hereinafter defined) on the last Business Day of each consecutive one hundred eighty (180) day period, the Company shall deposit, or cause to be deposited, with the Escrow Agent immediately available funds in an amount equal to the aggregate Minimum Rent that would be scheduled to be due for the twenty-fifth (25th) through thirtieth (30th) calendar month period then immediately succeeding such date of deposit and the Escrow Agent shall deposit such amount in the Escrow Account and shall allocate such amount to the Interim Ground Rent Reserve."

[2] "Beneficiary" is defined in the Servicing Agreement as UMB Bank, N.A., as Trustee, and shall have that definition as used herein.  The term "Project" as used herein shall have the same definition herein as in the Servicing Agreement (i.e., the planned apartment complex on the Property).

[3] The term "Escrow Agent" as used herein shall refer to the Escrow Agent defined in the Servicing Agreement, *i.e.,* UMB, Bank, N.A., as Trustee.

Account⁴ and allocate such amount to the Interim Ground Rent Reserve (the "IGR Reserve Deposit").

17.     On that basis alone, Defendant considered Plaintiff to be in default of its obligations under the Loan Documents and demanded that Plaintiff make the additional deposit into the Interim Ground Rent Reserve by the end of that week.

18.     At the time, Plaintiff unequivocally denied Defendant's allegations by e-mail dated May 22, 2021 and letter dated June 9, 2021.  In both the e-mail and letter, Plaintiff advised Defendant that Plaintiff (a) never agreed to fund the Defendant's request to make an additional deposit into the Interim Ground Rent Reserve (and that such request for funding was expressly denied to Defendant's representative, Mesirow Financial), (b) was not in default under the Loan Documents based upon the December 7, 2020 approvals of the foundation and new building plans and the election of the Tenant to self-fund construction on an interim basis, and (c) would not make any deposit to the Interim Ground Rent Reserve since there was no obligation to do so under the Loan Documents.

19.     In fact, Plaintiff had provided Defendant with evidence sufficient to establish the Project Cost Capitalization and Permit Date as early as December 2020, and well before any additional IGR Reserve Deposits were due.

20.     Defendant never provided any substantive response to Plaintiff's May 22, 2021 email or its June 9, 2021 letter.

⁴ "Escrow Account" is defined in Section 2.1 of the Servicing Agreement as "an FDIC-insured account," for "receipt and disbursement of funds," "at a commercial banking institution and shall be composed of the following separate reserves (which may be maintained as separate accounts or subaccounts at the option of the Escrow Agent): (a) the Note Payment Reserve; (b) the Rating Expense Reserve; (c) the Interim Ground Rent Reserve; and (d) the Balance Reserve."

7

21.     Upon information and belief, Defendant never considered Plaintiff's identification of a "capital source . . . sufficient to pay for the costs of construction" and never sought the trust beneficiary's approval for this alternative capital source.

22.     Defendant never acknowledged that Plaintiff had identified this alternative capital source consistent with the terms of Section 4.1(b)(A) of the Servicing Agreement.

23.     Defendant never provided Plaintiff with any explanation as to why, or on what basis, the trust beneficiary would decline to accept the alternative capital source.

24.     Nor was there any reasonable basis for the trust beneficiary to decline to accept the alternative capital source.  At all relevant times, Tenant was able to fund the construction of the Project.  And, through the date of this Complaint, Tenant has made all rent payments owed under the Lease and as required by the Loan Documents.

25.     Without basis, Defendant then proceeded to issue two formal notices of default dated July 1, 2021 and August 6, 2021 (the "Notices of Default").  In both Notices of Default, Defendant again alleged that an Event of Default occurred under Section 3.l(b) of the Servicing Agreement which triggered an Event of Default under Section 5.1 of the Mortgage because the Plaintiff failed to provide reasonably satisfactory evidence of having met the Project Cost Capitalization and Permit Date requirements or deposit with the Escrow Agent on the last Business Day of the latest 180-day period after the closing date (i.e., on March 25, 2021) immediately available funds in an amount equal to the aggregate Minimum Rent that would be scheduled to be due for the 25th through 30th calendar month period (i.e., $418,200.00).

26.     As Plaintiff explained to Defendant via letter, however, Defendant had no such basis to call an Event of Default under the Loan Documents.

27.     On multiple occasions, Plaintiff had communicated to the Defendant's representatives that the Tenant had elected to self-fund the Project, had provided a completion guaranty from a credit-worthy guarantor (the "<u>Completion Guaranty</u>"), which taken together certainly constituted and acceptable alternative capital source.  Plaintiff also provided Defendant with additional copies of the Completion Guaranty.

28.     Notwithstanding the foregoing, the Defendant and its representatives have asserted that Tenant had not progressed on the Project.  The facts, however, demonstrate otherwise.

29.     On December 7, 2020, the approval for new building application #321595733 was granted by the New York City Department of Buildings.  The planning and approval process is an expensive and a time-consuming endeavor in New York City, and the project has received significant investment from the Tenant to obtain those approvals.  In addition to the approval, the Tenant had cleared the construction site, a necessary step in the preparation for full construction to commence.  Moreover, on December 14, 2021, the Tenant under the ground lease closed on a construction loan in order to finance the construction of the apartment building on the Property, and Defendant was fully apprised of such closing at the time.

30.     True and correct copies of photos taken October 16, 2022 and showing further construction progress by the Tenant at the site are attached hereto as **Exhibit 1, 2, and 3**.

31.     As shown by the above facts, Defendant was not entitled to require Plaintiff to continue to fund IGR Deposits to the Interim Ground Resent Reserve or to charge default interest.  As of no later than December 2020, Plaintiff had no further obligation to fund IGR Deposits to the Interim Ground Rent Reserve pursuant to the Servicing Agreement including, without limitation, Section 3.l(b) thereof.

32.     Yet, Defendant has continued to take the position that a default under the Loan Documents exists and, on that basis, has unlawfully and in express violation of the Loan Documents misappropriated rents and late fees in order to pay itself alleged default interest that is not due.

33.     To date, Defendant has misappropriated rents and late fees due Plaintiff in an amount that is at least $140,855.82.

34.     In addition, Defendant has improperly withdrawn from reserves $1,221,717.89 in purported default interest as of November 30, 2022.

35.     Defendant is claiming and has collected default interest under the Loan Documents commencing on April l, 2021 even though the initial Notice of Default was not delivered to Plaintiff until July 1, 2021.  Nevertheless, Defendant continues to purport to collect default interest as of the date of this Complaint.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

36.     Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

37.     Plaintiff and Defendant entered into the Servicing Agreement, which was and remains a valid and enforceable contract.

38.     Under Section 3.1(b) of the Servicing Agreement, IGR Reserve Deposits are due only prior to the occurrence of the Project Cost Capitalization and Permit Date.

39.     The Project Cost Capitalization and Permit Date, as defined in the Servicing Agreement, has occurred, as evidenced by the December 7, 2020 approvals of the foundation and new building plans, which approvals were communicated to Defendant, and the election of the

10

Tenant to self-fund construction on an interim basis along with the Completion Guaranty from a credit-worthy guarantor.

40.     Despite the occurrence of the Project Cost Capitalization and Permit Date, Defendant has issued two Notices of Default to Plaintiff, and has continued to take the position that a default under the Loan Documents exists, and, on that basis, has misdirected rents and late fees in order to pay itself alleged default interest that is not due under the Loan Documents.

41.     Defendant incorrectly claims default interest due in the amount of $1,221,717.89 and has misappropriated rents in the amount of $140,855.82 as of November 30, 2022.

42.     Defendant has no legal basis to issue the Notices of Default, to charge default interest, or to misappropriate rents or late fees from Plaintiff under the Loan Documents.

43.     Defendant has failed to act in accordance with its obligations under the Servicing Agreement by improperly claiming default interest, and misdirecting rents and late fees under the guise of default interest that is not due under the Loan Documents.

44.     At all relevant times, Plaintiff has complied with its obligations under the Loan Documents and no Event of Default has occurred under Section 3.l(b) of the Servicing Agreement or Section 5.1 of the Mortgage.

45.     Plaintiff seeks a declaration under the Loan Documents that (i) no Event of Default occurred under Section 3.l (b) of the Servicing Agreement or Section 5.1 of the Mortgage; (ii) Plaintiff does not have the obligation to fund the IGR Deposits to the Interim Ground Rent Reserve after December 2020; (iii) Defendant's collection of default interest is not permitted under the Loan Documents; and (iv) Defendant's Notices of Default are void.

46.     Declaratory relief is appropriate because, given Defendant's issues of the Notices of Default, and Defendant's failure to act in accordance with the terms of the Loan Documents,

there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.  Absent the declaration sought herein, Plaintiff is without an adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

47.     Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

48.     Plaintiff and Defendant entered into the Servicing Agreement, which was and remains a valid and enforceable contract.

49.     Under Section 3.1(b) of the Servicing Agreement, IGR Reserve Deposits are due only prior to the occurrence of the Project Cost Capitalization and Permit Date.

50.     The Project Cost Capitalization and Permit Date, as defined in the Servicing Agreement, occurred in December 2020.

51.     Plaintiff is therefore under no obligation to fund any further IGR Deposits to the Interim Ground Rent Reserve.

52.     Defendant breached the Loan Documents by:  (i) failing to accept or acknowledge reasonably satisfactory evidence provided by Plaintiff that permits for the construction of the foundation and vertical improvements of [the] Project have been issues"; (ii) failing to accept or acknowledge reasonably satisfactory evidence that "any other capital source . . . has been procured in an amount sufficient to pay the cost of construction"; (iii) declaring an Event of Default when none had occurred; (iv) collecting default interest before Lender had declared an Event of Default; (v) declaring Events of Default on July 1, 2021 and August 6, 2021; and (vi) misdirecting rents and depleting reserve accounts in order to pay itself late fees and default interest that are not due under the Loan.

53.    As a direct result of Defendant's breach, Plaintiff has sustained significant damages in the amount of approximately $1,362,573.71 or such other amount to be proved at trial.

## THIRD CAUSE OF ACTION
### (Breach of the Duty of Good Faith and Fair Dealing)

54.    Plaintiff repeats and realleges the allegations contained above, as if fully set forth herein.

55.    Plaintiff and Defendant entered into the Servicing Agreement, which was and remains a valid and enforceable contract.

56.    Under New York law, all contracts contain an implied covenant of good faith and fair dealing.

57.    As part of the duty of good faith and fair dealing, neither party to a contract may act in a way that prevents performance of the contract or deprives the other of the benefits of the agreement.

58.    Upon information and belief, the Trustee never considered the reasonably satisfactory evidence provided to it that established that Project Cost Capitalization and Permit Date has occurred.

59.    Upon information and belief, Defendant never sought or obtained the trust beneficiaries' approval for an alternative capital source, as required under the Servicing Agreement.

60.    Despite repeated requests, Defendant has refused to disclose to Plaintiff the name of the trust beneficiary that is referenced in the Loan Agreement and who may approve an alternative capital source.

61.    In the alternative, to the extent that Defendant took any action in connection with the reasonably satisfactory evidence offered by Plaintiff, Defendant withheld those facts from

13

Plaintiff in order to prevent Plaintiff from further establishing that the Project Cost Capitalization and Permit Date has occurred. Indeed, Defendant has refused to even acknowledged that Plaintiff offered reasonably satisfactory evidence regarding whether the Project Cost Capitalization and Permit Date. Further, Defendant has withheld the identify to any trust beneficiary that may or may not have taken action in connection with Plaintiff's offer of reasonably satisfactory evidence.

62.     As evidenced by its own correspondence, Defendant has repeatedly conceded the insufficiency of its legal position by offering to waive the Event of Default or withdraw the Event of Default provided that Plaintiff make certain concessions that are not required under the terms of the Loan Documents.

63.     On July 1, 2021, for example, Defendant offered to waive the imposition of default interest if Plaintiff agreed to fund the IGR Reserve Deposits and to provide reasonably satisfactory evidence of having met the Project Cost Capitalization and Permit Date. Defendant's offer made no mention whatsoever of the fact that Plaintiff had already done the latter and was not contractually required to do the former.

64.     Defendant has taken the above actions in bad faith and in order to prevent Plaintiff from establishing that the Project Cost Capitalization and Permit Date has occurred.

65.     Defendant's breach of the duty of good faith and fair dealing has caused Plaintiff to incur damages in the amount of approximately $1,362,573.71 or such other amount to be proved at trial.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff hereby requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

14

(i)      Declaring that (a) no Event of Default occurred under Section 3.l(b) of the Servicing Agreement or Section 5.1 of the Mortgage; (b) Plaintiff does not have the obligation to fund the IGR Deposits to the Interim Ground Rent Reserve on or after December 2020; (c) Defendant's collection of default interest is not permitted under the Loan Documents; and (d) Defendant's Notices of Default are void;

(ii)     On Plaintiff's Second and Third Causes of Action, awarding damages to Plaintiff in the amount not less than $1,362,573.71, plus interest, attorneys' fees, and costs, and

(iv)     Granting such other and further relief as the Court may deem just or proper.

Dated:  New York, New York
        January 6, 2023

                              Respectfully submitted,

                              HUNTON ANDREWS KURTH LLP

                              By: _____
                              Patrick L. Robson
                              200 Park Avenue, 52nd Floor
                              New York, New York  10166
                              Telephone: (212) 309-1000
                              Email: probson@huntonAK.com


                              *Attorney for Plaintiff 280 Meeker, LLC*

15